GLENN, Collector of Internal Revenue, v. COURIER–JOURNAL JOB PRINTING CO.

No. 9038.

Circuit Court of Appeals, Sixth Circuit.

May 14, 1942.

Harry Marselli, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., J. Louis Monarch and Harry Marselli, Sp. Assts. to Atty. Gen., and Eli H. Brown, III, of Louisville, Ky., on the brief), for appellant.

Joseph Selligman, of Louisville, Ky. (Joseph Selligman and Samuel L. Greenebaum, both of Louisville, Ky., on the brief), for appellee.

Before HICKS, HAMILTON, and McALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

The Courier-Journal Job Printing Company, under protest, paid a deficiency assessment on income tax, and thereafter brought suit for the amount of such payment against the Collector of Internal Revenue. The District Court entered judgment in its favor, and the Collector appeals.

Appellee contends that the judgment represents properly allowable deductions from income tax on account of a loss and bad debt. Appellant claims that the transactions, whereby deductible losses are sought to be established, amounted only to a reorganization and that no real losses were suffered by appellee.

For many years prior to April 1, 1933, appellee owned 416 shares of the 800 outstanding shares of the capital stock of The Insurance Field Company, a Kentucky corporation with its principal place of business in Louisville, Kentucky, and herein referred to as the "old company." The main business of the Field Company was the publication of The Insurance Field Magazine. The company also sold supplies to insurance agencies and companies, and published books on various subjects pertaining to insurance, as well as various accounting forms. It had no printing facilities, and whatever business of this kind it procured was turned over to appellee Courier-Journal Job Printing Company. The Field Company also had an agreement with appellee whereby the latter sold materials to certain insurance companies, in the name of the Field Company, in whose name the account was billed. Formerly, commissions were paid by appellee to the old company on this business, but payment of such commissions was terminated after 1932.

On April 1, 1933, the corporate charter of the Field Company expired, although its officers, as well as the officers of appellee, were not aware of that fact and did not have it brought to their attention until early in the year of 1934. Under Kentucky law, expiration of a corporate charter requires a winding up of the affairs of the corporation.

On March 29, 1934, articles were executed for the incorporation of a new company under the name of The Insurance Field Company, herein referred to for convenience as the "new company." The officers and directors of the old company sought to bring about a continuance of the business by having the new company offer to the stockholders of the old company the same number of shares in the new company as each had held in the old company; and it was proposed that the new company should receive all of the assets of the old company and assume its liabilities. However, one of the stockholders in the old company, owning 72 shares of stock, declined to participate in the reorganization and demanded that the old company be liquidated. The proposed plan was thereafter abandoned; and appellee then purchased the 72 shares of the recalcitrant stockholder for $2,400. During 1934, 302 shares of stock of the old corporation, which had been purchased by employees

on credit, were canceled, and the purchase money notes surrendered, by agreement between the company and such employees. With this cancellation of stock, the original number of 800 shares was reduced to 498 shares. Appellee, having originally owned 416 shares, and having purchased the additional 72 shares, was, accordingly, the owner of 488 shares of the 498 shares outstanding, for which it had paid $44,000. Appellee company, which was the chief creditor of the old corporation, wished to avoid the liquidation of the business of that company and, in order to avoid this eventuality, made plans to effect the carrying on of the business as formerly. To this end, in November, 1934, the assets of the old company were appraised and an audit made, which showed that the old company was indebted to the appellee in the amount of $68,050.39. In addition, it owed to other creditors, the sum of $3,119.83. Its assets were valued at $32,640.67, no value being placed upon "goodwill."

On December 10, 1934, at a meeting of the stockholders of the old company, a resolution was adopted, in which its assets were transferred to appellee in consideration of appellee's discharging the old company's existing indebtedness to creditors (other than that of appellee), in the amount of $3,119.83—and applying upon the old company's debt of $67,251.15 of that date, the value of its assets in the amount of $29,520.84. This left an unpaid balance of $37,730.31 due appellee. The directors and officers of the old company were authorized to wind up its business and to transfer its assets to the appellee; and, thereafter, a meeting of the directors of the old company adopted the same resolution.

Following the meeting of the stockholders of the old company, the stockholders of the new company met and adopted a resolution which provided that in consideration of the transfer by the appellee of the assets of the old company, which it had received, to the new company, the latter would cause to be issued to appellee 499 shares of its capital stock, at a valuation of $59.16 per share, or at a total valuation of $29,520.84; and that appellee would discharge the debts of the old company, excepting the old company's obligation to the appellee. The Board of Directors of the new company thereafter adopted the same resolution.

With minor exceptions, the stockholders and directors in the old and new corporations were the same. Appellee transferred the assets it had received from the old corporation to the new corporation, which proceeded to continue the former business of the old company with the same customers and the same assets. The result of these transactions was that appellee's stock holdings in the old corporation became valueless, and the balance of its debt against the old corporation was uncollectible. The new corporation became the owner of the assets of the old corporation. The stock in the new corporation was owned by appellee. The old corporation was liquidated. Its stock was worthless; it had no assets, and claims against it were worthless.

In its income tax return for the year 1934, appellee claimed a deduction for the unpaid balance of its account against the old company, as a bad debt, ascertained to be worthless and charged off within the taxable year. Appellee claimed a further deduction of $44,000 for the loss which it had sustained on its stock holdings in the old company, predicated on the fact that the shares of stock which it then held in the old company were entirely worthless. The Commissioner disallowed both deductions, ruling that appellee had not suffered any loss during the year 1934, by reason either of its account receivable against the old company or its ownership of stock therein; and further, that, even if such a loss had been sustained, it was not deductible because it was incurred in a transaction which was a reorganization of the old company and, therefore, was not properly a deduction under the Revenue Act of 1934.

The provisions of Sec. 23, subsections f and k, of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, pages 672, 673, provide as follows: "In computing net income there shall be allowed as deductions: * * * (f) Losses by Corporations. In the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise. * * * (k) Bad Debts. Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts); * * *."

Appellee printing company secured the assets of the old company for a consideration of $32,640.67 which included assumption of debts in the amount of $3,119.83, and the giving of credit in the amount of $29,520.84 on the balance of the debt due

appellee. When the old company transferred its assets, the balance of the debt which was due appellee, became worthless, as well as the shares of stock in the old company, of which appellee was owner, and for which it had paid the sum of $44,-000.

■ As a result of the transfer of assets for the consideration above mentioned, appellee suffered a loss of $44,000, representing the stock; and any chance of collecting the balance of the debt, amounting to $37,730.31, became hopeless. These losses were properly deductible for the taxable year of 1934, for it was at this time that the liquidation, which was the identifiable event necessary to establish for deductible losses, took place.

It is claimed, however, that appellee received the goodwill of the old company at the time of the transfer of the assets. The answer is that appellee bought and paid for the specified assets only. It was unnecessary to buy the goodwill. It had no value to anyone who did not have the property in question and who did not know how to operate the business. The goodwill could not have been sold to anyone else. It was shown that the old company had been losing considerable sums of money for a long period of time. It is doubtful whether there was any goodwill on which the slightest cash value could have been properly placed. If appellee could have been said to have secured the goodwill, it did so without purchasing it and without a transfer thereof to it; and it is important to observe that no complaint or criticism is made with regard to the value placed upon the assets which were actually transferred. We cannot agree, if appellee availed itself of the so-called goodwill, under the foregoing circumstances, that the losses it suffered, by reason of its stock holdings and unpaid debt, would be thereby reduced. The old company realized only on the value of its assets, other than goodwill.

However, appellant contends that the effect of the transaction between appellee and the old and new companies, was only a reorganization and that no resultant loss should be recognized.

Section 112 of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 692, insofar as here applicable, provides that upon the sale or exchange of property, the entire loss shall be recognized with the following exceptions: No loss shall be recognized—

"If stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization;

"If a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization;

"If property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation."

■ None of the foregoing exceptions are here applicable. Appellee's stock was not exchanged for stock in the new corporation. The old corporation did not exchange its property for stock in another corporation. Appellee made no exchange of its property or stock, but rather received property in partial payment for a debt; and, while it exchanged property for stock in the new corporation, the loss claimed did not arise from that transaction. We cannot consider that the transfer of the assets of the old company to the appellee in partial payment of its debt, and the transfer of such assets by appellee to the new company, for stock therein, is the same as a transfer of the assets of the old company to the new company. When a corporation is liquidated, gains or losses of its creditors and stockholders are recognized. The loss was real and was suffered by appellee as a corporate entity, separate from the old company (see Burnet, Commissioner, v. Aluminum Goods Manufacturing Co., 287 U.S. 544, 53 S.Ct. 227, 77 L.Ed. 484); and such loss was not definitely ascertainable until the liquidation of the old company [see Burnet v. Riggs National Bank, 4 Cir., 57 F.2d 980].

It is contended by appellant that the transaction was merely a reorganization within the terms of Sec. 112(g) of the Act, as an acquisition by one corporation in exchange solely for all or part of its voting stock: of the stock of another corporation, or of substantially all the properties of another corporation; or that it was a transfer by a corporation of all or a part of its assets to another corporation,

followed immediately by control of the transferee corporation by the transferor or its stockholders; or that the transaction amounted to a mere change in identity, form, or place of organization. However, there was no exchange of stock between the old company and appellee. There was no resultant control by the transferor or its stockholders. The change in form and identity, resulting from the transfer of the assets of the old company to the appellee, the organization of a new corporation, and the transfer of the assets of the old corporation by appellee to the new corporation, was more than a mere change in form and identity.

While there was a continuity of business, there was no continuity of ownership, and as a general rule, a corporation and its stockholders are deemed separate entities; and this is true in respect to tax problems. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348. The old company retained no stake and no proprietary interest in the enterprise. The transfer of assets at a fair price was in payment of a debt, and did not amount to a reorganization. See Pinellas Ice & Cold Storage Co. v. Commissioner of Internal Revenue, 287 U.S. 462, 53 S.Ct. 257, 77 L.Ed. 428; LeTulle v. Scofield, 308 U.S. 415, 60 S.Ct. 313, 84 L.Ed. 355; nor did the old company receive any interest in the new company or in the property and business of appellee; and there was no continuity of interest resulting from the transfer of the assets. See Mascot Stove Co. v. Commissioner of Internal Revenue, 6 Cir., 120 F.2d 153, 156, certiorari denied Feb. 9, 1942, 62 S.Ct. 630, 86 L.Ed. ——. All that the old company received from appellee, was credit for a partial payment of its debt.

There might have been a reorganization, with transfers of assets and stock, in which the same interests would reappear without right of deduction for losses; but this does not militate against the conclusion that a liquidation of one company and the reorganization of a new corporation can have the effect of establishing deductible losses,—although the interests in the new corporation would be the same as they would have been in a reorganized corporation in which such losses were not established, and recognized. As said by Judge Simons in Mascot Stove Co. v. Commissioner of Internal Revenue, supra,

"liquidation is the antithesis of reorganization."

From the foregoing, it is our conclusion that the losses claimed, as above set forth, were properly deductible; and the judgment of the District Court is affirmed.