**UNITED STATES v. ARCADE CO. et al.**

No. 11584.

United States Court of Appeals
Sixth Circuit.

April 7, 1953.

As Amended on Denial of Rehearing
May 4, 1953.

S. Dee Hanson, Washington, D. C. (Ellis N. Slack, Acting Asst. Atty. Gen., Helen Goodner, Joseph F. Goetten, Spec. Asst. to the Atty. Gen., Ward Hudgins, Nashville, Tenn., on the brief), for appellant.

F. A. Berry and F. M. Bass, Jr., Nashville, Tenn., on the brief; Bass, Berry & Sims, Nashville, Tenn., of counsel, for appellees.

Before SIMONS, Chief Judge, and MARTIN and McALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

The issue in this case is whether certain business transactions amounted to a corporate reorganization under Section 112(g) of the Internal Revenue Code, Title 26 U.S. C.A. § 112(g). The district court held that there was no reorganization, and the government appealed.

The facts are as follows: The Arcade Company, organized in 1902, long prior to the enactment of the Federal Income Tax Amendment, employed, in 1943, a tax accountant and attorneys to work out a plan to minimize federal taxes and provide for a larger share of the company's earnings for its stockholders. As a result, on September 22, 1943, the stockholders of the company, by resolution, voted to surrender its charter and dissolve the corporation on September 30, 1943; and the corporation was, accordingly, dissolved. The resolution further provided for two trustees in whom the assets of the dissolved corporation should be vested for disposition to the stockholders, or in such manner as they should direct. The former stockholders gave directions in writing to the trustees that the assets be transferred to a new corporation, to be thereafter organized, in return for its newly issued stock. Subsequently, the assets were transferred to a new corporation, Arcade Company, Inc., by the trustees, and in payment for the assets, the new company, delivered to the trustees for the stockholders shares of its stock for the assets of the old company. Thereafter, the trustees transferred the shares of stock to the beneficiaries of the trusts for which they were acting—the persons who had been stockholders in the old company— in the same proportion as in the old company.

The tax incident that gives rise to this controversy relates to the claim of a deduction for ordinary business expense. The Arcade Company claimed that the expense of the tax accountant and attorneys whom it employed to work out the plan to provide a larger share of the company's earnings

for its stockholders was an ordinary and necessary expense in carrying out its business. The Commissioner determined that such expense was a capital expenditure rather than a current expense, and that it was not deductible. The district court, however, determined that it was deductible as a necessary business expense.

In contending that the transaction in question constituted a reorganization, the government relies upon the definition of a reorganization as set forth in Title 26 U.S.C.A. § 112(g)(1). Appellee contends that there was no continuity between the old corporation and the new corporation, and that, under the relevant provisions of the statute, there was no reorganization; that the costs and expenses of counsel and auditors in preparing the plan were necessary business expenses of the old corporation, and, therefore, properly deductible; and that the judgment of the district court should be affirmed.

Title 26 U.S.C.A. § 112(g)(1), defines a reorganization, as follows:

"(D) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its shareholders or both are in control of the corporation to which the assets are transferred".

Title 26 U.S.C.A. § 112(g)(2), provides:

"The term 'a party to a reorganization' includes a corporation resulting from a reorganization and includes both corporations in the case of a reorganization resulting from the acquisition by one corporation of stock or properties of another."

Title 26 U.S.C.A. § 112(b)(4), provides:

"No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization."

An exchange of property for stock in which gain or loss is not recognized under the Internal Revenue Act must satisfy the following requirements: (1) there must be a reorganization, as that term is defined in the statute; (2) the corporation must transfer "property;" (3) such property must be exchanged for stock or stock and securities, except that an assumption of liabilities or the taking subject to liabilities for the transferee corporation may also be a part of the consideration; (4) the exchange must be made in pursuance of the plan of reorganization; (5) both the transferor and the corporation, the stock or securities of which are received, must be a party to the reorganization. Mertens' Law of Federal Income Taxation, Volume 3, Section 20.65 (page 236).

The government claims that the transactions above set forth constituted a reorganization, as defined in Title 26 U.S.C.A. § 112(g), and that the taxpayer corporation was liable for the deficiency assessment theretofore made, with interest. This contention is based upon the claim that the dissolution of the old corporation, the transfer of its assets to trustees for the stockholders, the organization of a new corporation, the direction by the former stockholders to the trustees to exchange the assets of the old corporation to the new corporation in consideration of the delivery of stock in the new corporation, was an integrated plan of reorganization, not to discontinue the business of the old corporation, but, rather, to continue the same business more profitably under a new guise. It is to be observed, however, that the legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, by means which the law permits, can not be doubted. Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596.

In the light of the above mentioned sections of the Internal Revenue Code, we compare what was actually done in this case, with these various statutory provisions.

In the first place, the charter of the old company was surrendered and the corporation was dissolved before the new corporation received the assets through transfer by the trustees. Manifestly, there could be no transfer by the old corporation of its

assets to the new corporation which, in the strict language of the statute, is required in order to constitute a reorganization. Nor was there an exchange of property by the old corporation to the new corporation for the latter's stock, nor were there any agreements between the old and new corporations, or exchanges between them, pursuant to a plan of reorganization, all of which are necessary to reorganizations under section 112(g)(1). When the old corporation was dissolved, it was at an end and liquidated. Its assets were transferred to its former stockholders, or what was the same thing, to trustees for their benefit. The former stockholders paid income tax in the way of a capital gains tax on what they had received from their stock as a liquidating dividend. There was no right on the part of the dissolved corporation to enforce any agreement as to what was to take place subsequent to its dissolution. It had no rights or obligations, as far as any plan to form a new corporation was concerned, or to see that the trustees for the former stockholders entered into such a plan or transferred the assets to a new corporation. The former stockholders at the time of the liquidation of the old corporation were the absolute owners of the corporate assets. They were under no contractual obligations to form a new corporation or to transfer their assets to a new corporation in return for stock therein. They could have sold the assets to an outside real estate corporation or an individual, and in such a case, there could have been no claim that any reorganization had resulted from the transactions. The former stockholders of the old corporation had not bound themselves to carry out any plan of reorganization. The new corporation had no rights that could be enforced against the former stockholders of the old corporation to require them to form a new corporation, or, for that matter, any rights whatever with respect to the old corporation or the former stockholders thereof. Apparently the government contends that because the old corporation employed a tax accountant and lawyers to work out a plan whereby stockholders could secure a larger share of the company's earnings, and that,

subsequently, the corporation followed the advice given, and the stockholders later acted upon it, there was a "plan of reorganization" within the intendment of the statute, and that the transactions above mentioned amounted to a reorganization pursuant to a plan therefor. But the "plan of reorganization," specified by the statute, is not just any suggestion or advice received from a lawyer or a tax accountant, even though it be acted upon by either a corporation, or its stockholders, or both. What is envisaged by a "plan of reorganization" within the intendment of the statute may be perceived in one of the provisions of the Treasury Regulations promulgated to carry out Section 112 of the Internal Revenue Code, under the heading of "Records to be Kept and Information to be Filed With Returns." "The plan of reorganization must be adopted by each of the corporations parties thereto; and the adoption must be shown by the acts of its duly constituted responsible officers, and appear upon the official records of the corporation." Treasury Reg. 103, Section 19.112(g)–6, Title 26 Code of Federal Regulations, 29.-112(g)–6. When the old corporation was dissolved and the assets were transferred to its former stockholders, there was a break in the continuity of ownership, for, as a general rule, a corporation and its stockholders are deemed separate entities; and this is true in respect to tax problems. New Colonial Ice Co., Inc. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348. The dissolution of the old company and the transfer of its assets to its former stockholders put a period to its existence. The new company was a different and separate enterprise. It is notable that throughout the regulations governing reorganizations under Title 26 U.S.C.A. § 112(g), it is set forth variously that the terms, "reorganization" and "party to a reorganization", mean only a reorganization or a party to a reorganization as defined in section 112(g); that, in order to exclude transactions not intended to be included, the *specifications* of the reorganization provisions of the law are *precise,* and that both the terms of the specifications and their underlying assumptions and purposes must be satisfied in **order**

to entitle the taxpayer to the benefit of the exception to the general rule; that the application of the term, "reorganization," is to be *strictly* limited to the *specific* transaction set forth in section 112(g)·(1); that the term, "a party to a reorganization", includes, in addition to a corporation which performs the *specific* act constituting the reorganization, as described and defined in section 112(g)(1), only a corporation specified in section 112(g)(2); that the term, "plan of reorganization," has reference to a consummated transaction *specifically* defined as a reorganization under section 112(g)(1), and that the term is not to be construed as broadening the definition of reorganization as set forth in that section; and, as heretofore mentioned, that the plan of reorganization must be adopted by each of the corporations parties thereto. Title 26, Code of Federal Regulations, 29.112(g)–1 to (g)–6, inclusive. We do not find, in what is here claimed by the government to constitute a "plan of reorganization," and a "reorganization," any such transactions, so precisely specified, so strictly limited to the language of the statute, and providing for such express adoption by the corporations, as are required by the regulations governing reorganizations under the taxing statute. We are of the opinion that the transactions in question did not constitute a reorganization under the Internal Revenue Code.

In Braicks v. Henricksen, D.C.Wash., 43 F.Supp. 254, where the taxpayer was concerned with seeking allowance of a dividends paid credit on an undistributed profits tax, the court was confronted with a problem almost identical to the one before us. It appeared in that case that in 1937, the directors of a corporation, called the Old Company, "concluded that the stated value of its capital stock was too low and that the corporation was paying excess profits taxes in an amount larger than the company's situation required. For the sole purpose of attempting to correct the situation and on the advice of the corporation's tax counsel, the following plan was devised and effectuated: (1) Proceedings were instituted for the liquidation of the Old Company. (2) All of the assets of the Old Company were transferred to plaintiffs as trustees for the stockholders and as liquidating trustees of the company by the declaration of a liquidating dividend. (3) The stockholders of the Old Company were advised by the company that the receipt on their behalf by the trustees of their proportionate share in the assets of the Old Company constituted a dividend subject to tax and every stockholder was advised as to the increase in his income tax resulting from the receipt of such dividend. (4) With one exception, each of the stockholders paid such income tax in accordance with such advice. (The exception was an isolated one and his failure to pay had no connection with the corporation or the plan.) (5) Contemporaneous with these transactions, [the New Company] was formed. (6) Each stockholder of the Old Company was notified that he was free to choose as to whether or not to enter into the New Company and financial arrangements were made to make possible the purchase for cash from each stockholder of his proportionate share of the assets held for him by the plaintiffs as trustees. (7) Each stockholder subscribed for the stock of the New Company, the stock subscription obligation being payable in cash. (8) The subscribers to the capital stock of the New Company thereupon offered to the New Company that they would cause to be transferred to the New Company all of the assets held for them by the trustees subject to the obligations of the Old Company which the New Company was to agree to pay in fulfillment of their capital stock subscriptions of the New Company. (9) The New Company accepted the offer and stock was issued to the individuals in the same proportionate share as they owned stock in the Old Company. (10) The assets were shown on the books of the New Company as of their net value as shown on the books of the Old Company. (11) The dissolution of the Old Company was completed." On the foregoing facts, the district court held that the transaction was not a "reorganization" but was a "liquidation," and that the liquidating trustees, in making income tax returns for the year in which the transaction occurred, were entitled to a dividend paid credit on such portion of the amount distributed in liquida-

tion which was properly chargeable to earnings or profits of the Old Company accumulated after February 28, 1913. On review, 9 Cir., 137 F.2d 632, the judgment of the district court was affirmed, the court of appeals saying that the pivotal point in the case was whether or not there was a real and bona fide distribution in liquidation made to the stockholders in the old company, and if there was such an actual distribution—however brief the interval during which each individual stockholder retained title to his share of the assets—then the taxpaying corporation was entitled to a dividends paid credit on the ground that the transaction was a liquidation rather than a reorganization. The court held that the evidence disclosed that there was an actual distribution to each stockholder, who thereafter could exercise an independent choice as to whether he would or would not go into the new company.

In its attempts to distinguish the Braicks case, supra, the government submits that the court therein did not find that the old company had adopted a plan of reorganization, but that it did find that the stockholders were advised that they were free to retain and dispose of their interest in the assets of the old company and to choose whether or not they would enter into the new company; and it is implied that this advice that the stockholders were free to act in the matter differentiated that controversy from the one before us. But in the instant case, there was no plan of reorganization adopted by the old company; and each stockholder, prior to the dissolution of the old corporation, received notice of the special meeting to consider acting upon arrangements to distribute the property of the company pro rata among the shareholders or to convey the property to a trustee for their benefit. After the meeting, the former stockholders were notified in writing that provision had been made for the transfer of the assets to the trustees, and a suggested letter was submitted that stockholders could direct to the trustees. This proposed letter set forth how much stock had been owned by the stockholder, and directed the trustees to ascertain when and if a new corporation had been organ-ized to do business similar to that of the old company. The proposed letter further authorized the trustees to transfer all of the assets of the old corporation to such a new corporation under certain conditions. It can hardly be concluded that the stockholders did not have the right, after the assets of the old company had been transferred to them or their trustees, to exercise, each for himself, an independent choice as to whether or not he would, or would not go into the new corporation. No one else could exercise the right for him, or require him to do so. We are of the opinion that the distinction which the government seeks to draw between the two cases is without substance, and we are persuaded by the reasoning of the court in the Braicks case.

Many authorities are cited by appellant in support of its contentions, and, in relying upon them, the government emphasizes that where transactions result in a new corporation which emerges and actually uses the transferred assets to continue the business with the same proprietary interests, such transactions amount to a reorganization. But the cases cited, are not here in point, and circumstances disclosed, as above mentioned, are not in themselves controlling. See Glenn v. Courier-Journal Job Printing Co., 6 Cir., 127 F.2d 820. Here, there was a liquidation of the old company, and, as said by Judge Simons in Mascot Stove Co. v. Commissioner, 6 Cir., 120 F.2d 153, "liquidation is the antithesis of reorganization."

It is our conclusion that there was no transfer by the old corporation of its assets to the new corporation, within the meaning of section 112(g)(1); that neither the old nor the new corporation was a "party to a reorganization", as set forth in section 112(g)(2); and that the transactions out of which this controversy arose did not constitute a reorganization within the intendment of the Internal Revenue Code.

Having held against appellant upon the question of reorganization, and having concluded that the transactions in question amounted to liquidation of the old corporation, we are of the opinion that the services of the tax accountant and attorneys, here

in question, were rendered to the old corporation; that the expenses incurred therefor were for the benefit of the old corporation; and, since they constituted ordinary and necessary expense in carrying on its business, they were properly deductible. To the same effect, see Braicks v. Henricksen, D. C., 43 F.Supp. 254, 261.

In accordance with the foregoing, the judgment of the district court is affirmed.