OPINION. Harron, Judge: The issue arises because the respondent determined that the transaction in which the assets in question were acquired by petitioner was a tax-free reorganization under sections 112 (b) (4) and 112 (g) (1) (C), and that under section 113 (a) (7) the basis to petitioner of the assets was $18,602.19, which was the basis of the assets in the hands of Power Gates. Under section 112 (b) (4) of the 1939 Code, no gain is recognized “if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization”; and, under section 112 (g) (1) (C), there is a reorganization if there is an acquisition by one corporation, in exchange solely for all or a part of its voting stock, of substantially all of the assets of another corporation. Petitioner contends that there was no plan of reorganization and that the provisions of section 112 (b) (4) do not apply. Petitioner cites United States v. Arcade Co., 203 F. 2d 230. Upon consideration of petitioner’s argument, which it is unnecessary to set forth, little merit can be found in this contention. The evidence leaves us with no doubt that in the early part of 1946, Going, Wilson, and Dilley, the organizers of Transport, and Smith, the president of Power Gates, discussed a plan to acquire Signal Division of Peerless. Wilson obtained an option to purchase Signal Division from Peerless, and in due course, Power Gates was willing to give up its assets to a new corporation. The discussions clearly contemplated combining the assets of both Signal Division and Power Gates in the hands of a new corporation which would carry on the operations which were being conducted by Signal Division and Power Gates. Although the plan is to be found in the discussions and negotiations, no formal written plan having been drawn up and executed, it is sufficient for the purposes of the statute if the various steps leading up to the transactions which are consummated evidence a plan. William H. Redfield, 34 B. T. A. 967, Hortense A. Menefee, 46 B. T. A. 865. First, petitioner was organized; next, petitioner purchased the assets of Signal Division of Peerless. Finally, petitioner acquired substantially all of the assets of Power Gates in exchange for petitioner’s stock. The evidence shows that what was done constituted exact technical compliance with the provisions of sections 112 (b) (4) and 112 (g) (1) (C). Cf. Robert Campbell, 15 T. C. 312, 320. At best, petitioner’s argument is weak; it is rejected. It is held that petitioner acquired the assets of Power Gates in pursuance of a plan of reorganization. Petitioner’s chief contention is, however, that the assets of Power Gates were not acquired by petitioner solely for 4,920 shares of petitioner’s voting stock, that, therefore, there was no reorganization within the provisions of section 112 (g) (1) (0), and that it follows that the basis to petitioner of the assets acquired from Power Gates is $30,000, their fair market value at the time of acquisition. The petitioner advances a theory which is, briefly, as follows: The petitioner argues that it made an agreement through Wilson, Going, and Dilley on May 24, 1946, to repurchase 920 shares of its stock at the option of Power Gates; that the alleged agreement to repurchase 920 shares represented the equivalent tof cash to Power Gates; and, therefore, that the assets in question were not acquired solely for stock of the petitioner but were transferred by Power Gates for stock and other consideration, money. The petitioner argues that it makes no difference that Power Gates did not call upon petitioner to repurchase any of its stock under the agreement executed by Wilson, Going, and Dilley on May 24,1946; and that without the agreement made on May 24, 1946, by Wilson, Going, and Dilley, Power Gates was not willing to make the exchange. Careful consideration has been given to petitioner’s theory, but we are unable to conclude that the evidence before us supports it. The written agreement of May 22, 1946, under which the exchange was made for 4,920 shares of petitioner’s stock, is controlling. The question must be decided upon, the basis of what the parties to that agreement actually did. We are unable to find, upon the record before us, that the subsequent agreement of May 24,1946, constituted an agreement of the petitioner. The respondent points out that if it could be found that the agreement of May 24,1946, was one to which petitioner was a party, it would have been in violation of section 271.120, Kentucky Revised Statutes, which provides that no corporation shall be the purchaser of any part of its own stock unless the purchase is necessary to prevent loss upon a debt previously contracted or unless the purchase is required by law. However that may be, and if, perhaps, the agreement of May 24,1946, executed by the three individuals, had some effect in inducing Power Gates to make the exchange, the agreement did not create an obligation in the petitioner, and it did not represent any part of the quid pro quo. We are unable to accept the petitioner’s theory. It is held that the agreement of May 24,1946, was made by the three individuals who signed the agreement, and that they made the agreement in their individual capacities. There is nothing in the record which overcomes the plain inference to be drawn from the terms of the agreement of May 24,1946, that the three individuals who signed the agreement were obligated, severally, to purchase from Power Gates 920 shares of Transport stock within 6 months if Power Gates called upon them to do so. Under this agreement, consideration for such proposed purchase, at the option of Power Gates, would have passed from the three individuals, or from any one of them, rather than from the petitioner. The evidence doesn’t show any reason why Wilson, Going, and Dilley could not, or would not, individually purchase stock of Transport from Power Gates. We are compelled to conclude that the May 24 agreement was exactly what it is by its terms, namely, an entirely separate agreement of the individuals to buy all or some of 920 shares of petitioner’s stock from Power Gates. Cf. New Jersey Mortgage & Title Co., 3 T. C. 1277, 1288; Stockton Harbor Industrial Co. v. Commissioner, 216 F. 2d 638, certiorari denied 349 U. S. 904. The determination of the respondent is sustained, and his several adjustments are approved. Decision will be entered for the respondent.