Howard E. NADEAU, Receiver for Superior Sugar Refining Company, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 499.

United States District Court
W. D. Michigan, N. D.
Feb. 5, 1960.

Michael O'Hara, Menominee, Mich., for receiver Nadeau.

Richard D. Hobbet of Michael, Spohn, Best & Friedrich, Milwaukee, Wis., for Superior Sugar.

Wendell A. Miles, U. S. Atty., Grand Rapids, Mich., for defendant.

KENT, District Judge.

This is an action instituted by the Receiver for the Superior Sugar Refining Company, a Michigan corporation, for refund of excess profit taxes paid. All preliminary steps necessary to confer jurisdiction upon this Court have been taken.

Essentially, plaintiff claims that he is entitled to use as a base in computing the excess profit taxes of the Superior Sugar Refining Company the depreciated value of the assets of Superior Sugar Refining Company as reflected in the books of the Menominee River Sugar Company, which was the owner of the plaintiff's plant prior to its acquisition by the Superior Sugar Refining Company.

The Government claims that the Receiver must use the fair market value of the assets in 1935 less depreciation since the acquisition of the assets by the Superior Sugar Refining Company in that year.

The basic question is whether the Superior Sugar Refining Company is a corporation created as a result of a tax free reorganization of the Menominee River Sugar Company within the meaning of the provisions of the applicable Internal Revenue Code, infra.

Briefly, the facts are as follows:

The Menominee River Sugar Company was a corporation created early in the Twentieth Century, which over a period of years operated three beet sugar plants, two in Wisconsin and one in Michigan. In 1924, the Menominee River Sugar Company issued bonds secured by a trust mortgage which mortgage had as security a lien on all of the physical assets of the Menominee River Sugar Company. In 1929, and again in 1930, the Menominee River Sugar Company defaulted in the payment of interest on these bonds. In 1931, the trustee of the trust mortgage, which secured the bonds, commenced foreclosure proceedings in the Michigan and Wisconsin courts. A bondholders committee was formed and certificates of interest were issued to the bondholders in exchange for their bonds.

At the foreclosure sale of the Menominee Michigan plant in 1931, the bondholders committee bid in that portion of the assets covered by the foreclosure in

the Michigan court. The medium of exchange used by the bondholders committee in payment for the Michigan assets was principally bonds of the Menominee River Sugar Company, held by the committee. The bondholders committee also bid in the Wisconsin plants in 1932, in proceedings in the state courts of Wisconsin. During that same year the Menominee River Sugar Company filed a petition in bankruptcy, was adjudicated a bankrupt, and the corporation was dissolved by the trustee in bankruptcy on or about March 20, 1933.

In 1932, some members of the bondholders committee formed the Menominee Sugar Company, a Wisconsin corporation, which obtained a lease on the Green Bay, Wisconsin plant from the bondholders committee of the Menominee River Sugar Company and operated the Green Bay Plant. In 1933, the Menominee Sugar Company became the owner of the Green Bay plant, exchanging stock of the Menominee Sugar Company for the plant and other assets, which stock was distributed by the committee in exchange for certificates of interest. Also in 1933, the Superior Sugar Refining Company, the taxpayer in the instant case, was organized under the laws of the State of Michigan by some of the holders of certificates of interest issued by the bondholders committee, together with others, who had no connection with the original company. Those holders of certificates of interest who participated in the formation of the Superior Sugar Refining Company paid cash in exchange for their stock. The new company then leased the Menominee, Michigan plant from the bondholders committee and operated it until 1935, at which time the Superior Sugar Refining Company purchased the plant facilities, including land and building, from the bondholders committee, issuing stock of the Superior Sugar Refining Company to those holders of certificates of interest who elected to continue their interest in the Menominee, Michigan plant. The Superior Sugar Refining Company assumed certain liabilities and also paid some cash to the bondholders committee for the purpose of making a cash payment to holders of certificates of interest who elected not to continue their interest in the Menominee, Michigan plant. At the completion of this transaction 84.5% of the Superior Sugar Refining Company was owned by persons who had been holders of bonds of the Menominee River Sugar Company, but not essentially in the same proportion as the bonds were held. No reason has ever been assigned for the continuation of ownership of the Menominee, Michigan plant facilities by the bondholders committee during the period of operation of those facilities by the Superior Sugar Refining Company from 1933 to 1935. No reason has ever been assigned for the delay in the transfer of the physical assets from the bondholders committee to the Superior Sugar Refining Company.

■ The basic question, and the controlling question in this case, is whether there was a continuity of interest in Superior Sugar Refining Company in identity of ownership of the corporate assets of Menominee River Sugar Company which would justify classifying the transaction as a tax free reorganization which would permit the use of the depreciated cost of the Menominee River Sugar Company by Superior Sugar Refining Company in computing values for excess profit tax purposes of the assets obtained by Superior Sugar Refining Company from the bondholders committee in the alleged reorganization. Plaintiff claims that there was a continuity of ownership between the Menominee River Sugar Company and the Superior Sugar Refining Company within the meaning of the applicable provisions of the Internal Revenue Code either for 1934 or for 1939.

This Court is satisfied that it is not now necessary to determine whether the 1934 Internal Revenue Code is applicable or whether the 1939 Internal Revenue Code is applicable because of the similarity of the provisions with which we are concerned. Under the 1934 Code, 26 U.S.C.A. Int.Rev.Acts, page 692, we are

concerned with the following provisions: Section 112(b) (4).

"No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization."

Section 112(d).

"If an exchange would be within the provisions of subsection (b) (4) of this section if it were not for the fact that the property received in exchange consists not only of stock or securities permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then—

(1) If the corporation receiving such other property distributes it in pursuance of the plan of reorganization, no gain to the corporation shall be recognized from the exchange, but

(2) * * *."

Section 112(g).

As used in this section and Section 113—

"(1) The term 'reorganization' means (A) a statutory merger or consolidation, or (B) the acquisition by one corporation in exchange solely for all or a part of its voting stock, of substantially all the properties of another corporation, but in determining whether the exchange is solely for voting stock the assumption by the acquiring corporation of a liability of the other, or the fact that property acquired is subject to a liability, shall be disregarded; * * *. (2) The term 'a party to a reorganization' includes a corporation resulting from a reorganization and includes both corporations in the case of a reorganization resulting from the acquisition by one corporation of stock or properties of another."

Under the 1939 Code we are concerned with Section 112(b) (4), 26 U.S.C.A. § 112(b) (4) which is the same as Section 112(b) (4) of the 1934 Code, and also with:

Section 112(b) (10).

"No gain or loss shall be recognized if property of a corporation (* * *) is transferred, in a taxable year of such corporation beginning after December 31, 1933, in pursuance of an order of the court having jurisdiction of such corporation—

"(A) in a receivership, foreclosure, or similar proceeding, or

"(B) * * *

"to another corporation organized or made use of to effectuate a plan of reorganization approved by the court in such proceeding, in exchange solely for stock or securities in such other corporation."

Section 112(d). Same as under the 1934 Code, except that subsection 112(b) (10) is also included.

Section 112(g) (1) (C). Same as Section 112(g) (1) (B) of the 1934 Code.

Section 112(k). Contains a provision as to the assumption of a liability by one party to a reorganization. In Section 213(f) of the Revenue Act of June 29, 1939, 26 U.S.C.A. Int.Rev.Acts, p. 1177, a similar provision was made applicable retroactively to prior Codes, including the 1934 Code.

It seems clear from the provisions set forth above that before a transaction or series of transactions can be brought within these reorganization provisions of the Internal Revenue Code and thus be given tax free status there must be in effect a literal compliance with the Code provisions and the transaction must meet the "business purposes" test set forth in Gregory v. Helvering, 1935, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, and the "continuity of interest" test found in Helvering v. Alabama Asphaltic Limestone Co., 1942, 315 U.S. 179, 62 S.Ct. 540, 543, 86 L.Ed. 775. And see also LeTulle v. Scofield, 1940, 308 U.S. 415, 60 S.Ct. 313, 84 L.Ed. 355.

■ The basic statutory provisions are found in Sections 112(b) (4) and (b) (10) of the 1939 Code, supra, and Section 112(b) (4) of the 1934 Code, supra, and require that any transfer must be made from one corporation to another *pursuant to a plan* of reorganization. The mere fact that the stockholders of the Menominee River Sugar Company were forced out of the picture by the foreclosure of their interest in the assets by the bondholders committee would not be sufficient to prevent a "continuity of interest" in the new company, if such new company were organized by the bondholders committee pursuant to a *plan* of reorganization. Helvering v. Alabama Asphaltic Limestone Co., 1942, 315 U.S. 179, at page 183, 62 S.Ct. 540, at page 543:

"We conclude, however, that it is immaterial that the transfer shifted the ownership of the equity in the property from the stockholders to the creditors of the old corporation. Plainly, the old continuity of interest was broken. Technically that did not occur in this proceeding until the judicial sale took place. For practical purposes, however, it took place no later than the time when the creditors took steps to enforce their demands against their insolvent debtor. In this case, that was the date of the institution of bankruptcy proceedings. From that time on, they had effective command over the disposition of the property. The full priority rule of Northern Pacific Ry. Co. v. Boyd, 228 U.S. 482, 33 S.Ct. 554, 57 L.Ed. 931, applies to proceedings in bankruptcy as well as to equity receiverships. Case v. Los Angeles Lumber Co., 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110. It gives creditors, whether secured or unsecured, the right to exclude stockholders entirely from the reorganization plan when the debtor is insolvent. See In re 620 Church Street Building Corp., 299 U.S. 24, 57 S.Ct. 88, 81 L.Ed. 16. When the equity owners * * * become the stockholders of the new corporation, it conforms to realities to date their equity ownership from the time when they invoked the processes of the law to enforce their rights of full priority. At that time they stepped into the shoes of the old stockholders. The sale 'did nothing but recognize officially what had before been true in fact.' Helvering v. New Haven & S. L. R. Co., 2 Cir., 121 F.2d 985, 987.

"That conclusion involves no conflict with the principle of the LeTulle case. A bondholder interest in a solvent company plainly is not the equivalent of a proprietary interest, even though upon default the bondholders could retake the property transferred. The mere possibility of a proprietary interest is of course not its equivalent. But the determinative and controlling factors of the debtor's insolvency and an effective command by the creditors over the property were absent in the LeTulle case.

"Nor are there any other considerations which prevent this transaction from qualifying as a 'reorganization' within the meaning of the Act. The Pinellas case [Pinellas Ice & Cold Storage Co. v. Commissioner of Internal Revenue] makes plain that 'merger' and 'consolidation' as used in the Act includes transactions which 'are beyond the ordinary and commonly accepted meaning of those words' 287 U.S. [462] at page 470, 53 S.Ct. [257] at page 260, 77 L.Ed. 428. Insolvency reorganizations are within the family of financial readjustments embraced in those terms as used in this particular statute. Some contention, however, is made that this transaction did not meet the statutory standard because the properties acquired by the new corporation belonged at that time to the committee and not to the old corporation. That is true. Yet the separate steps were integrated parts of a single

scheme. Transitory phases of an arrangement frequently are disregarded under these sections of the revenue acts where they add nothing of substance to the completed affair. Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596; Helvering v. Bashford, 302 U.S. 454, 58 S.Ct. 307, 82 L.Ed. 367. Here they were no more than intermediate procedural devices utilized to enable the new corporation to acquire all the assets of the old one pursuant to a single reorganization plan."

See also Palm Springs Holding Corp. v. Commissioner, 1942, 315 U.S. 185, 62 S.Ct. 544, 86 L.Ed. 785.

█ It is equally clear that mere literal compliance with the provisions of the Code is not sufficient to make a transaction tax free unless the plan under which the steps necessary to the reorganization are taken is for a purpose which meets the requirements for a continuation of the business. Gregory v. Helvering, 1935, 293 U.S. 465, 55 S. Ct. 266, 79 L.Ed. 596, and from that case it appears without question that some or all of the steps leading to the reorganization may be ignored if not present.

Two Circuits have reached the conclusion that a dissolution of the predecessor corporation, if pursuant to a plan of reorganization will not prevent the transaction from being tax free. Survaunt v. Commissioner, 8 Cir., 1947, 162 F.2d 753, and Love v. Commissioner, 3 Cir., 1940, 113 F.2d 236.

There may be circumstances in which a dissolution will make it impossible to have a transfer from the old corporation to the new corporation, thus eliminating the "step" transaction doctrine laid down in Survaunt v. Commissioner and Love v. Commissioner, supra. Obviously, in the present case the bondholders committee had no control over the trustee in bankruptcy who took the steps necessary to dissolve the original Menominee River Sugar Company.

A similar situation was before the Court of Appeals for the Sixth Circuit in United States v. Arcade Co., 1953, 203 F.2d 230. The Court of Appeals of this Circuit was there faced with the question of whether the transactions amounted to a corporate reorganization within the meaning of Section 112(g) of the Internal Revenue Code. We quote at length from the opinion of Chief Judge McAllister, who states at page 231—

"The facts are as follows: The Arcade Company organized in 1902, long prior to the enactment of the Federal Income Tax Amendment, employed, in 1943, a tax accountant and attorneys to work out a plan to minimize federal taxes and provide for a larger share of the company's earnings for its stockholders. As a result, on September 22, 1943, the stockholders of the company, by resolution, voted to surrender its charter and dissolve the corporation on September 30, 1943; and the corporation was, accordingly, dissolved. The resolution further provided for two trustees in whom the assets of the dissolved corporation should be vested for disposition to the stockholders, or in such manner as they should direct. The former stockholders gave directions in writing to the trustees that the assets be transferred to a new corporation, to be thereafter organized, in return for its newly issued stock. Subsequently, the assets were transferred to a new corporation, Arcade Company, Inc., by the trustees, and in payment for the assets, the new company, delivered to the trustees for the stockholders shares of its stock for the assets of the old company. Thereafter, the trustees transferred the shares of stock to the beneficiaries of the trusts for which they were acting—the persons who had been stockholders in the old company—in the same proportion as in the old company."

And further at page 232—

"The government claims that the transactions above set forth consti-

tuted a reorganization, as defined in Title 26 U.S.C.A. § 112(g), and that the taxpayer corporation was liable for the deficiency assessment theretofore made, with interest. This contention is based upon the claim that the dissolution of the old corporation, the transfer of its assets to trustees for the stockholders, the organization of a new corporation, the direction by the former stockholders to the trustees to exchange the assets of the old corporation to the new corporation in consideration of the delivery of stock in the new corporation, was an integrated plan of reorganization, not to discontinue the business of the old corporation, but, rather, to continue the same business more profitably under a new guise. It is to be observed, however, that the legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, by means which the law permits, can not be doubted. Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596.

"In the light of the above mentioned sections of the Internal Revenue Code, we compare what was actually done in this case, with these various statutory provisions.

"In the first place, the charter of the old company was surrendered and the corporation was dissolved before the new corporation received the assets through transfer by the trustees. Manifestly, there could be no transfer by the old corporation of its assets to the new corporation which, in the strict language of the statute, is required in order to constitute a reorganization. Nor was there an exchange of property by the old corporation to the new corporation for the latter's stock, nor were there any agreements between the old and new corporations, or exchanges between them, pursuant to a plan of reorganization, all of which are necessary to reorganizations under section 112(g) (1).

When the old corporation was dissolved, it was at an end and liquidated. Its assets were transferred to its former stockholders, or what was the same thing, to trustees for their benefit. The former stockholders paid income tax in the way of a capital gains tax on what they had received from their stock as a liquidating dividend. There was no right on the part of the dissolved corporation to enforce any agreement as to what was to take place subsequent to its dissolution. It had no rights or obligations, as far as any plan to form a new corporation was concerned, or to see that the trustees for the former stockholders entered into such a plan or transferred the assets to a new corporation. The former stockholders at the time of the liquidation of the old corporation were the absolute owners of the corporate assets. They were under no contractual obligation to form a new corporation or to transfer their assets to a new corporation in return for stock therein. They could have sold the assets to an outside real estate corporation or an individual, and in such a case, there could have been no claim that any reorganization had resulted from the transactions. The former stockholders of the old corporation had not bound themselves to carry out any plan of reorganization. The new corporation had no rights that could be enforced against the former stockholders of the old corporation to require them to form a new corporation, or, for that matter, any rights whatever with respect to the old corporation or the former stockholders thereof. Apparently the government contends that because the old corporation employed a tax accountant and lawyers to work out a plan whereby stockholders could secure a larger share of the company's earnings, and that, subsequently, the corporation followed the advice given, and the

stockholders later acted upon it, there was a 'plan of reorganization' within the intendment of the statute, and that the transactions above mentioned amounted to a reorganization pursuant to a plan therefor. But the 'plan of reorganization,' specified by the statute, is not just any suggestion or advice received from a lawyer or a tax accountant, even though it be acted upon by either a corporation, or its stockholders, or both. What is invisaged by a 'plan of reorganization' within the intendment of the statute may be perceived in one of the provisions of the Treasury Regulations promulgated to carry out Section 112 of the Internal Revenue Code, under the heading of 'Records to be Kept and Information to be Filed with Returns.' 'The plan of reorganization must be adopted by each of the corporations parties thereto; and the adoption must be shown by the acts of its duly constituted responsible officers, and appear upon the official records of the corporation.' Treasury Reg. 103, Section 19.112(g)–6, Title 26 Code of Federal Regulations, 29.–112(g)–6. When the old corporation was dissolved and the assets were transferred to its former stockholders, there was a break in the continuity of ownership, for, as a general rule, a corporation and its stockholders are deemed separate entities; and this is true in respect to tax problems. New Colonial Ice Co., Inc. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348. The dissolution of the old company and the transfer of its assets to its former stockholders put a period to its existence. The new company was a different and separate enterprise. It is notable that throughout the regulations governing reorganizations under Title 26 U.S.C.A. § 112 (g), it is set forth variously that the terms 'reorganization' and 'party to a reorganization', mean only a reorganization or a party to a reor-

ganization as defined in section 112 (g); that, in order to exclude transactions not intended to be included, the *specifications* of the reorganization provisions of the law are *precise*, and that both the terms of the specifications and their underlying assumptions and purposes must be satisfied in order to entitle the taxpayer to the benefit of the exception to the general rule; that the application of the term, 'reorganization,' is to be *strictly* limited to the *specific* transaction set forth in section 112(g) (1); that the term, 'a party to a reorganization', includes, in addition to a corporation which performs the specific act constituting the reorganization, as described and defined in section 112(g) (1), only a corporation specified in section 112 (g) (2); that the term 'plan of reorganization,' has reference to a consummated transaction *specifically* defined as a reorganization under section 112(g) (1), and that the term is not to be construed as broadening the definition of reorganization as set forth in that section; and, as heretofore mentioned, that the plan of reorganization must be adopted by each of the corporations parties thereto. Title 26, Code of Federal Regulations, 29.112(g)–1 to (g)–6, inclusive. We do not find, in what is here claimed by the government to constitute a 'plan of reorganization' and a 'reorganization,' any such transactions, so precisely specified, so strictly limited to the language of the statute, and providing for such express adoption by the corporations, as are required by the regulations governing reorganizations under the taxing statute. We are of the opinion that the transactions in question did not constitute a reorganization under the Internal Revenue Code."

The Court then discusses the case of Braicks v. Henricksen, D.C.Wash., 43 F. Supp. 254, and continues at page 235—

"In its attempts to distinguish the Braicks case, supra, the government submits that the court therein did not find that the old company had adopted a plan of reorganization, but that it did find that the stockholders were advised that they were free to retain and dispose of their interest in the assets of the old company and to choose whether or not they would enter into the new company; and it is implied that this advice that the stockholders were free to act in the matter differentiated that controversy from the one before us. But in the instant case, there was no plan of reorganization adopted by the old company; and each stockholder, prior to the dissolution of the old corporation, received notice of the special meeting to consider acting upon arrangements to distribute the property of the company pro rata among the shareholders or to convey the property to a trustee for their benefit. After the meeting, the former stockholders were notified in writing that provision had been made for the transfer of the assets to the trustees, and a suggested letter was submitted that stockholders could direct to the trustees. This proposed letter set forth how much stock had been owned by the stockholder, and directed the trustees to ascertain when and if a new corporation had been organized to do business similar to that of the old company. The proposed letter further authorized the trustees to transfer all of the assets of the old corporation to such a new corporation under certain conditions. It can hardly be concluded that the stockholders did not have the right, after the assets of the old company had been transferred to them or their trustees, to exercise, each for himself, an independent choice as to whether or not he would, or would not go into the new corporation. No one else could exercise the right for him, or require that the distinction which the government seeks to draw between the two cases is without substance, and we are persuaded by the reasoning of the court in the Braicks case."

From the stipulation of facts and the evidence before the Court, we are forced to conclude that the transactions and the dealings between the bondholders committee of the Menominee River Sugar Company and the Superior Sugar Refining Company were not pursuant to any plan of reorganization. In essence the bondholders found themselves compelled to foreclose upon the assets of the Menominee River Sugar Company, which they did.

It appeared from the proofs taken at the hearing that a sugar refining plant, such as the one here involved, when not operated deteriorates rapidly. The Court is satisfied that no plan for reorganization had been adopted when some of the bondholders formed a new company, i. e. Superior Sugar Refining Company, to operate the Michigan plant owned by the bondholders committee of the Menominee River Sugar Company. The Court is satisfied that no plan was contemplated and certainly no plan would have been adopted until the bondholders were satisfied that a new company could operate at a profit.

The Superior Sugar Refining Company appears to have been a speculative enterprise entered into by certain of the former bondholders and others with a view to continuing the refining of sugar in the Menominee, Michigan plant, if such business could be conducted in a manner which would persuade the bondholders who owned the plant of the probable success of the operation.

There is no evidence in this record, either by stipulation or by proof, that any plan of reorganization had been adopted at the time of the formation of the Superior Sugar Refining Company, or at any time prior to the ultimate transfer of the physical assets from the bondholders committee to the Superior Sugar Refining Company.

Further there is considerable doubt, and this Court is forced to conclude, that the transfer of the assets was not from one corporation, Menominee River Sugar Company, (dissolved in 1933), to another corporation, Superior Sugar Refining Company, when the plant became the property of the Superior Sugar Refining Company in 1935, as contemplated by the Internal Revenue Code provisions, supra.

The Court is forced to the conclusion that the transfer of assets and the creation of the Superior Sugar Refining Company was not a tax free reorganization and, therefore, the plaintiff is not entitled to use the value of the property in the hands of the Menominee River Sugar Company in computing the excess profit taxes to be paid by the Superior Sugar Refining Company.

The Government may present the necessary judgment.